UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAOMI AYLWARD, individually and as personal representative for the Estate of Philip Aylward,<br><br>                                    Plaintiff,<br><br>v.<br><br>SELECTHEALTH, INC., an Utah corporation, dba SelectHealth; SELECTHEALTH BENEFIT ASSURANCE COMPANY, INC., an Utah corporation, dba SelectHealth Advantage HMO, and DOES 1-25 inclusive,<br><br>                                    Defendants. | Case No.:  18cv494-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the motion to dismiss or, in the alternative, transfer venue filed by Defendants.  (ECF No. 2).

## I.    BACKGROUND

On January 9, 2018, Plaintiff Naomi Aylward, individually and as personal representative for the Estate of Philip Aylward, filed a Complaint in the Superior Court of California for the County of San Diego bringing various tort causes of action against

Defendants SelectHealth, Inc. and SelectHealth Benefit Assurance Company, Inc arising from their administration of her deceased husband's medicare plan and her husband's death in 2016.[1]  (ECF No. 1-2).  Plaintiff alleges that Defendants unreasonably and intentionally delayed approval of her husband's initial request for a lung transplant evaluation and his dual listing for a lung transplant in both California and Arizona.  Plaintiff asserts that her husband, Philip Aylward, died in San Diego, California while waiting for a lung transplant as a result of Defendants' actions.

On March 7, 2018, Defendants removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1).

On March 9, 2018, Defendants filed a motion to dismiss, or in the alternative, transfer venue.  (ECF No. 2).  Defendants move to dismiss on the grounds that personal jurisdiction is lacking and that venue is improper.  Alternatively, Defendants request that the Court transfer this action to the District of Utah.[2]  *Id.*

On April 2, 2018, Plaintiff filed a response in opposition.  (ECF No. 7).

On April 9, 2018, Defendants filed a reply.  (ECF No. 8).

## II.   ALLEGATIONS OF THE COMPLAINT

"The decedent, Phillip E. Aylward, enrolled in a SelectHealth Advantage insurance plan ("the Plan") in the fall of 2015 with an effective date of January 1, 2016.  Plaintiff Naomi Aylward, decedent's spouse, was also enrolled in the Plan."  (ECF No. 1 at ¶ 9).

---

[1] Plaintiff alleges "Defendants SelectHealth, Inc, and SelectHealth Advantage HMO are referred to collectively herein as 'SelectHealth.'"  (ECF No. 1 at 8).  Defendants SelectHealth, Inc. and SelectHealth Benefit Assurance Company dba SelectHealth Advantage HMO also refer to themselves collectively as SelectHealth in their motions for dismissal and transfer.  (ECF No. 2 at 2).  Accordingly, the Court treats the Defendants as the same entity for purposes of resolving this motion.

[2] In a footnote in the reply brief, Defendants state "SelectHealth Benefit Assurance Company (SHBAC) is a subsidiary of SelectHealth" that provides products which do not have any relation to Aylward's plan. (ECF No. 8 at 2 n.1).  Defendants contend that Plaintiff's failure to allege substantive conduct by SHBAC warrants dismissal.  *Id.*  The Court does not consider this argument raised for the first time in the reply brief.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

"SelectHealth Advantage Plans are Medicare benefit and supplemental insurance plans which provide all the benefits to which Mr. Aylward was entitled to under Medicare and are administered privately by SelectHealth." *Id.* at ¶ 10.

"In November of 2015, Philip E. Aylward was diagnosed with Idiopathic Pulmonary Fibrosis (IPF)." *Id.* at ¶ 11.

> On January 13, 2016, Philip Aylward's treating physician, William Dittrich, M.D. advised Mr. Aylward to seek a lung transplant evaluation. Because such procedures were not available within the State of Idaho, Dr. Dittrich referred Mr. Aylward to the University of California at San Diego (UCSD) Medical Center given that Mr. Aylward was residing in Yuma, Arizona for the winter months. Dr. Dittrich suggested that the transplantation workup be performed as soon as possible due to Mr. Aylward's age and condition.

*Id.* at ¶ 12. "On January 26, 2016, UCSD Health System sent a request to SelectHealth for benefit coverage for an evaluation and workup for lung transplantation." *Id.* at ¶ 13. "A SelectHealth employee contacted Dr. Dittrich's office informing the office that it was unable to process the request and needed additional information . . . for the treatment." *Id.* at ¶ 14. "A revised request with additional information . . . was provided to SelectHealth that day." *Id.* at ¶ 15. "On January 28, 2016, the request was transferred to Karen Hudson, a SelectHealth employee, for review of the out-of-network benefits request." *Id.* at ¶ 16.

> On January 29, 2016, Karen Hudson spoke with Philip Aylward by telephone. Philip Aylward advised Ms. Hudson that he and the Plaintiff were currently in Arizona, but would be travelling to San Diego the next week. Mr. Aylward further communicated to Ms. Hudson that he did not yet have an appointment at the University of California at San Diego ("UCSD"), as he was "wanting to have everything in place" with his insurance before doing so. During the conversation, Mr. Aylward was told for the first time of SelectHealth's request that the evaluation be performed at the University of Utah Medical Center in Salt Lake City, Utah. Ms. Hudson falsely stated to Mr. Aylward that the University of Utah hospital was an "in-network provider." Mr. Aylward communicated to Ms. Hudson that he and the Plaintiff were upset that no one explained his benefits to them before their relocating to San Diego. Ms. Hudson referred Mr. Aylward and Plaintiff to his insurance broker to discuss his concerns despite the fact that SelectHealth was aware of the request for approval for the testing at UCSD since January 26, 2016. Shortly following

the conversation with Ms. Hudson, Mr. Aylward's request for Medicare insurance benefits was denied by SelectHealth as being "out of network."

*Id.* at ¶ 17.

"As a Medicare Plan, the SelectHealth Plan provides coverage for consultations, testing and ultimate lung transplantation if medically necessary to the patient." *Id.* at ¶ 18. The Plan requires that medical care and treatment be provided by an "in-network provider" but where no in-network provider is available for certain treatment, the Plan provides for coverage with an out-of-network provider. *Id.* "Ms. Hudson falsely informed Mr. Aylward that [the] University of Utah was available to provide the requested services and that it was, in fact, in-network which it was not." *Id.* "On January 29, 2016, formal notice was provided to Mr. Aylward and UCSD falsely advising him that there was an in-network provider and informing him of his appeal rights." *Id.* at ¶ 19. The notice did not inform Aylward of his right to appeal by telephone as provided in Chapter 2, Section 1 of the Plan. *Id.*

"On January 31, 2016, a written appeal was faxed to SelectHealth seeking 'urgent review.' The appeal included a statement from Mr. Aylward that it was impossible for him to survive in Utah given his condition and altitude, the inversion and smog." *Id.* at ¶ 20. "On February 1, 2016, [a] SelectHealth employee made an entry onto Mr. Aylward's claims file confirming that the University of Utah Medical Center also was not a contracting in-network provider." *Id.* at ¶ 21. On February 5, 2016, Mr. Aylward and UCSD were advised by SelectHealth that his claim was 'approved for consultation only.'" *Id.* at ¶ 22. On February 10, 2016, Aylward consulted with a physician at UCSD who diagnosed progressive IPF and agreed that Aylward needed a lung transplant evaluation as soon as possible. *Id.* at ¶ 23. "On March 7, 2016, a request for Medical Preauthorization was submitted to SelectHealth by the financial coordinator at UCSD for a lung transplant work-up. This request was approved on March 10, 2016." *Id.* at ¶ 24.

"On July 14, 2016, after considerable testing was performed, Mr. Aylward was recommended as a reasonable candidate for lung transplantation. Given his condition, it

was suggested to Mr. Aylward that he 'double-list' at St. Joseph Hospital and Dignity Health in Tucson, Arizona." *Id.* at ¶ 25.

"On August 22, 2016, UCSD requested a medical preauthorization for a single lung transplant for Mr. Aylward." *Id.* at ¶ 27. "On August 23, 2016, Dignity Health Norton Thoracic Institute at St. Joseph's Hospital and Medical Center in Phoenix, Arizona requested a medical preauthorization for a consultation/evaluation of Mr. Aylward for a possible lung transplant." *Id.* at ¶ 28. "On August 29, 2016, SelectHealth approved the lung transplant request by UCSD and Mr. Aylward was placed on the waiting list for a transplant." *Id.* at ¶ 29.

"On August 31, 2016 [SelectHealth employee] Karen Hudson informed SelectHealth's Medical Director, Krista Schonrock M.D., an internal medicine specialist, that Mr. Aylward was requesting dual listing, that St. Josephs could have him in transplantation within 15-days and seeking approval." *Id.* ¶¶ 31, 16. On September 1, 2016, Schonrock indicated that the claim should be denied after concluding that dual listing would require a "duplication of services." *Id.* at ¶ 32. The Plan did not preclude dual listing or additional testing being performed if medically necessary. St. Joseph's Hospital was seeking only medically necessary testing that was in addition to services performed at UCSD. *Id.*

On September 1, 2016, Hudson informed Aylward of the denial via telephone. Aylward stated that he wished to appeal. Hudson failed to process Aylward's appeal by telephone and Defendants failed to inform Aylward that he could have an expedited appeal by telephone. *Id.* at ¶ 33. "SelectHealth's Member Handbook provides that the Plan will provide a fast coverage decision within 72 hours if standard deadlines could cause serious harm to the patient's health or ability to function." *Id.* at ¶ 34. "A letter of denial was sent to Mr. Aylward on September 2, 2016 and, again, the notice did not inform Mr. Aylward of his right to appeal by telephone." *Id.* at ¶ 35. Aylward sent a letter to SelectHealth on October 5, 2016 requesting a "fast appeal" as the disease was "rapidly progressing" and reiterating that St. Joseph's would not be performing duplicative tests. *Id.* at ¶ 36.

SelectHealth denied the request for expedited appeal "with no apparent justification" on October 7, 2016. *Id.* at ¶ 37. On October 14, 2016, the request was approved for consultation only. *Id.* at ¶ 38. St. Joseph's informed SelectHealth that the consultation was useless without additional testing and on October 22, 2016, the consultation with testing was approved by Schonrock. *Id.* at ¶ 39–40.

"On October 26, 2016, a letter authorizing the consultation and testing at St. Joseph's was sent to Mr. Aylward but was never received by him." *Id.* at ¶ 41. "On October 28, 2016, Mr. Aylward died in San Diego, California while waiting for a lung transplant." *Id.* at ¶ 42.

Plaintiff brings the following causes of action individually and/or as personal representative of the Estate of Philip Aylward: (1) negligence (survivorship action); (2) negligence (wrongful death action); (3) negligent misrepresentation (survivorship and wrongful death action); (4) fraud – intentional misrepresentation (survivorship and wrongful death action); (5) bad faith (survivorship and wrongful death action); (6) failure to properly investigate claim (survivorship and wrongful death action); (7) breach of duty to inform insured of rights (survivorship and wrongful death action); (8) negligent infliction of emotional distress (wrongful death action); (9) intentional infliction of emotional distress (wrongful death action). Plaintiff seeks money damages in her capacity as Personal Representative of the Estate of Philip Aylward and in her individual capacity.

## III. PERSONAL JURISDICTION

Defendants move the Court for an order dismissing this action for lack of personal jurisdiction. Under Federal Rule of Civil Procedure 12(b)(2), a party may move for dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Where . . . the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *CollegeSource, Inc. v.*

*AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). "[T]he court resolves all disputed facts in favor of the plaintiff" when ruling on a motion to dismiss for lack of personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Although a plaintiff may not rely on the "bare allegations" of the complaint "uncontroverted allegations in the complaint must be taken as true." *CollegeSource, Inc.*, 653 F.3d at 1073.

When no federal statute governing personal jurisdiction is applicable, the district court applies the law of the "the state in which the district court sits." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto*, 539 F.3d at 1015; *see also* Cal. Civ. Proc. Code § 410.10. "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *CollegeSource*, 653 F.3d at 1073–74 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A defendant may be subject to either general or specific personal jurisdiction under due process analysis. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In this case, Plaintiff does not claim that general personal jurisdiction exists over Defendants; Plaintiff contends that the exercise of specific personal jurisdiction is proper over Defendants. (ECF No. 7 at 6). A court exercises specific personal jurisdiction "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). Courts employ a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or

consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff has the burden of proving the first two prongs." *Id.* at 1211–12 (citing *CollegeSource*, 653 F.3d at 1076). "If he does so, the burden shifts to the defendant 'to set forth a compelling case that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1212 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## A. Purposeful Availment and Direction

Defendants contend that they are Utah companies that do not conduct business in California and that the Complaint "makes clear that SelectHealth did not direct any conduct toward California seeking to avail itself of any benefit, or to conduct activities in California." (ECF No. 2-1 at 3). Defendants contend that the only alleged connection with California is that Aylward "unilaterally sought treatment there after obtaining insurance from Defendants in Idaho." *Id.*

Plaintiff contends that Defendants "took deliberate action which purposefully availed themselves of conducting business in California." (ECF No. 7 at 9). Plaintiff asserts that Aylward did not "unilaterally seek treatment in California." *Id.* at 7. Plaintiff asserts that Aylward was referred to UCSD in San Diego, California for a lung transplant evaluation by his treating physician because this treatment was not available in Idaho. *Id.* Plaintiff asserts that Aylward received treatment at UCSD in California following Defendants' approval of the treatment. Plaintiff asserts that Defendants approved the following requests from UCSD: initial consultation at UCSD, medical preauthorization for a lung transplant evaluation and workup at UCSD, and medical preauthorization for a single lung transplant at UCSD. Plaintiff asserts that Defendants paid benefits to UCSD and sent notification of its approval of treatments to UCSD. Plaintiff asserts that

Defendants were "also sent a proposed Letter of Agreement from UCSD relating to payment for medical treatment to be provided to Mr. Aylward by UCSD." *Id.* at 9.

In this case, the Court must determine whether the California activities and contacts of a non-resident insurance company are sufficient for the exercise of specific personal jurisdiction in a California forum. The first prong of personal jurisdiction analysis includes both purposeful availment and purposeful direction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ("We often use the phrase 'purposeful availment' in shorthand fashion, to include both purposeful availment and purposeful direction . . . but availment and direction are, in fact, two distinct concepts."). Under purposeful availment analysis, the Court determines whether a defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). Under purposeful direction analysis, the Court applies the *Calder* effects test. *See Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Purposeful availment analysis is generally used in suits sounding in contract and purposeful direction analysis is most often used in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802; *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("We decline to apply *Calder* because it is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here.").[3]

The Ninth Circuit Court of Appeals addressed the exercise of personal jurisdiction over defendant insurance companies in *Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir.

---

[3] Neither party explicitly argues that a particular analysis is applicable to this case; however, Plaintiff argues that Defendants have "purposefully availed themselves" of California and neither party references the *Calder* effects test. *See, e.g.*, ECF No. 7 at 13, 11, 9; *see also Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir. 1984); *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986).

1984), and *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986). In *Hunt*, the Court of Appeals addressed the exercise of personal jurisdiction over an east coast insurance company in a case in which a third-party beneficiary to an insurance policy moved to California for medical care after sustaining injuries in an automobile accident in Colorado. 728 F.2d at 1245. The plaintiff brought suit against the insurance company in California and argued that personal jurisdiction existed for the following three reasons: (1) the insurance policy at issue covered accidents occurring anywhere within the United States and did not specify where the benefits would be paid; (2) the insurance company availed itself of the benefit of California's welfare programs because public assistance had funded the plaintiff's medical needs after her move to California; and (3) the insurance company "availed itself of the privilege of doing business in California by mailing into the State some payments on the policy and [by] its bad faith refusal to pay the amount the plaintiff argues was due." *Id.* at 1246–47. The Ninth Circuit Court of Appeals determined that these contacts were insufficient to support the assertion of personal jurisdiction over the insurance company. The Court concluded that the "failure to structure [a] policy to exclude the possibility of defending a suit wherever an injured claimant requires care cannot, in our view, fairly be characterized as an act by which [an insurance company] has purposefully availed itself of the privilege of conducting activities in California." *Id.* at 1247. The Court further determined that the plaintiff's unilateral decision to relocate to California and receive public assistance in California could not be fairly attributed to the insurance company because it would improperly shift the focus of personal jurisdiction analysis to the relationship of the plaintiff with the forum state. The Court concluded, "We cannot agree that the requisite minimum contacts are established because a plaintiff's move into a state requires the defendant to send communications into that forum." *Id.* at 1248.

In *Hirsch*, the Ninth Circuit Court of Appeals determined that the exercise of personal jurisdiction in a California forum over an out-of-state insurance company was appropriate. 800 F.2d at 1476. In *Hirsch*, the defendant insurance company Blue Cross had entered into a contract with Southwest to provide group health care coverage for

Southwest employees, none of whom resided in California at the time. Under the contract, all of Southwest's full-time employees were eligible to participate and participation was not restricted geographically or by execution date. *Id.* After the contract was signed, Southwest hired three employees who lived in California, including plaintiff Terrance Hirsch, and added them to its group policy. Hirsch filled out the enrollment application forms in California and returned them to Southwest's Kansas City office. Hirsch "received a Blue Cross membership card, generated by Blue Cross offices in Kansas City, with his California address written on its face" and "Southwest deducted health care premiums from Hirsch's payroll checks, and forwarded the payments to Blue Cross." *Id.* at 1477. Hirsch brought an action against Blue Cross in California for breach of contract and bad faith, which was removed to district court and then challenged on personal jurisdiction grounds. *Id.* The Ninth Circuit Court of Appeals noted that Blue Cross might not have foreseen that its contract with Southwest would have effects in California at the time it signed the contract but determined that "Blue Cross, through its *own actions* in agreeing to provide coverage to Southwest and its California employee, Terrance Hirsch, created a continuing obligation to them, and a substantial connection with California." *Id.* at 1479–80. The Court stated, "We conclude that Blue Cross, by voluntarily and knowingly obligating itself to provide health care coverage to Southwest's California employees, in exchange for premiums partly derived from premiums paid by California residents, purposefully availed itself of the benefits and protections of that forum." *Id.* at 1480.

In this case, Plaintiff alleges that Defendants SelectHealth, Inc. and SelectHealth Benefit Assurance Company, Inc. are Utah corporations. (ECF No. 1 at ¶¶ 3–4). Plaintiff alleges that Aylward enrolled in one of Defendants' insurance plans as a resident of Idaho. *See id.* at ¶¶ 1, 9. Plaintiff alleges that Aylward's plan "provides coverage for consultations, testing and ultimate lung transplantation if medically necessary to the patient" and provides coverage with an out-of-network provider where no in-network provider is available to provide the treatment. *Id.* at ¶ 18. Plaintiff alleges that at the time of the request for treatment at UCSD, there was no in-network provider for the care and

treatment needed by Aylward and that his treating physician referred him to UCSD for a lung transplant evaluation because this medical care was not available in Idaho. *Id.* at ¶¶ 11–12, 18. Plaintiff alleges that "UCSD Health System sent a request to SelectHealth for benefit coverage for an evaluation and workup for lung transplantation. Extensive medical records and appropriate documentation were submitted with the request, substantiating the need for this testing." *Id.* at ¶ 13. Plaintiff alleges that Aylward sought approval of his out-of-network benefits request for medical care at UCSD from Defendants prior to making an appointment at UCSD. Plaintiff alleges that Aylward received his first consultation from UCSD only upon receiving approval of the request from Defendants. *See id.* at ¶¶ 17, 22. The Court accepts as true these uncontroverted factual allegations. *See CollegeSource, Inc.*, 653 F.3d at 1073.

Plaintiff further provides documentation of communications between Aylward and Defendants regarding approval of his initial lung transplant consultation at UCSD. Exhibit B, ECF No. 7-1 at 35–40. The financial coordinator at UCSD submitted a request for medical preauthorization for a lung transplant work-up to Defendants which was approved by Defendants. Exhibit B, ECF No. 7-1 at 11–22. UCSD also requested medical preauthorization for a single lung transplant for Aylward which was approved by Defendants. Exhibit B, ECF No. 7-1 at 25–34.

In this case, Plaintiff provides uncontroverted factual allegations and evidence sufficient to make a prima facie case that Aylward did not unilaterally seek treatment in California. *Cf. Hunt*, 728 F.2d at 1247 ("In our view, Hunt's decision to move to California cannot be attributed to Erie. . . . To characterize her decision as an intentional action by Erie, for purposes of meeting the purposeful availment requirement of due process, would frustrate the very policy behind that requirement: ensuring that a '*defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"). Plaintiff alleges that Aylward sought and received treatment at UCSD only upon receiving authorization from Defendants. Plaintiff alleges that Defendants then specifically authorized a consultation, lung transplant work-up and evaluation, and a lung

transplant at UCSD. Additionally, Plaintiff provides copies of multiple communications between Defendants and UCSD coordinating Aylward's treatment at UCSD in exhibits attached to the declaration of Erica S. Phillips. *See* Exhibit B, ECF No. 7-1. Plaintiff makes a prima facie showing that Defendants purposefully availed themselves of the privilege of conducting activities in California through Defendants' multiple authorizations of Aylward's treatment at UCSD in California and efforts to coordinate coverage for his medical care with UCSD under the health insurance plan. *See Hirsch*, 800 F.2d at 1478 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)) ("Therefore, the purposeful availment analysis turns upon whether the defendant's contacts are attributable to the 'actions of the defendant *himself*,' or conversely to the 'unilateral activity of another party.'"); *see also Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1213 (10th Cir. 2000) ("First, defendants have sufficient contacts with Utah: they precertified plaintiff McCluskey's treatment at a Utah hospital and paid plaintiff Goates, a Utah resident, for a portion of McCluskey's care."); *Hajjar v. Blue Cross & Blue Shield of Texas*, No. SACV0900362CJCJTLX, 2009 WL 2902482, at *4 (C.D. Cal. Sept. 10, 2009) ("While neither *Hirsch* nor *Hunt* is directly on point, this case is much closer to *Hirsch* because BCBST processed claims and paid providers in California. BCBST's availment of the forum goes far beyond that of the insurance company in *Hunt*, which merely corresponded by mail with the California plaintiff about claims for benefits rendered in another state. By repeatedly processing Ms. Hajjar's claims, BCBST purposefully availed itself of the privilege of conducting activities in California.").

### B. Forum-Related Activities

Defendants further contend that Plaintiff cannot demonstrate that her claims arise out of any forum-related activities by Defendants. Plaintiff contends that these claims arise from Defendants' forum-related activities because the "injury claim is the death of Mr. Aylward [in California] due to the failure to allow double listing for a lung transplant." (ECF No. 7 at 11). Plaintiff asserts that "the basis for the denial of the double listing was because Defendants had already paid for services at UCSD." *Id.*

For the proper exercise of personal jurisdiction, Plaintiff must make a prima facie showing that her claims "arise[] out of or relate[] to the defendant's forum-related activities." *Picot*, 780 F.3d at 1211. To determine whether a plaintiff's claims arise out of defendant's forum-related conduct, the Ninth Circuit Court of Appeals requires that a plaintiff demonstrate that she would not have suffered an injury "but for" the defendant's forum-related conduct. *Menken*, 503 F.3d at 1058.

In this case, Plaintiff's claims generally arise from the alleged wrongful death of Aylward as a result of Defendants' conduct. Aylward died in San Diego, California while waiting for a lung transplant. (ECF No. 1 at ¶ 42). Plaintiff alleges that Aylward "was subjected to unreasonable delay in receiving medically necessary and life-saving health care services" through Defendants' negligence. *Id.* at ¶¶ 45, 54. The claims relate to treatment Aylward received or sought to receive at both UCSD in California and St. Joseph's in Arizona. Further, the Complaint specifically alleges that Defendants wrongfully denied the claim for dual listing for the lung transplant at St. Joseph's in Arizona because the dual listing would require a duplication of services received at UCSD. *Id.* at ¶ 32. The Court concludes that Plaintiff's causes of action arise out of or relate to Defendants' forum-related activities. Plaintiff has carried her burden to satisfy the first two prongs of personal jurisdiction analysis. Accordingly, the burden now shifts to Defendants to demonstrate that the exercise of jurisdiction would not be reasonable. *See Menken*, 503 F.3d at 1060.

## C. Reasonableness

Defendants contend that the exercise of jurisdiction would not be reasonable under these circumstances because Defendants have no connection to and no reasonable expectation of being subject to litigation in California. Plaintiff contends that the exercise of personal jurisdiction is reasonable and that Defendants "have made no effort to provide a compelling case that would render jurisdiction unreasonable." (ECF No. 7 at 12).

"The final requirement for specific jurisdiction . . . is reasonableness. For jurisdiction to be reasonable, it must comport with fair play and substantial justice."

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). The defendant bears the burden to demonstrate unreasonableness, and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Courts consider the following factors in reaching a determination on reasonableness in this context:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476–77). "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

The Court has concluded that Defendants purposefully availed themselves of the California forum by preapproving Aylward's initial medical care at the UCSD Medical Center and continuing to approve medical treatment and coordinate care with administrators at the UCSD Medical Center. This factor weighs in favor of a determination that the exercise of personal jurisdiction is reasonable.

With respect to the second factor, Defendants contend that they "would face a significant and unreasonable burden if . . . required to travel to California, where it does no business, to litigate against an Idaho Plaintiff based on an insurance relationship created in Utah and Idaho that concerns services sought in Arizona." (ECF No. 8 at 7). Plaintiff contends that "[w]hile there is some burden on the Defendants for defending the case in California, they have provided no evidence that it is a substantial burden." (ECF No. 7 at 13). Defendants have not established that they will experience a substantial burden at having to litigate in California. *See Menken*, 503 F.3d at 1060 (quoting *CE Distrib., LLC*

*v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)) ("Nevertheless, with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."); *Panavision*, 141 F.3d at 1316, 1323, holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'") (quotations omitted). The Court concludes that this factor is neutral.

With respect to the third and fourth factors, Defendants contend that Utah has a strong interest in regulating Utah insurers and that Utah analyzes first-party insurance claims differently than California. Defendants contend that "[t]his interest is seriously infringed if Plaintiff can strategically cause a California court to adjudicate claims against a Utah insurer based on insurance decisions made in Utah concerning Arizona, and allegedly felt in Idaho." (ECF No. 8 at 7). Plaintiff contends that although Utah and Idaho provide alternative forums, California "has a strong interest in ensuring that patients receiving medical care in its state have effective redress against insurers who unreasonably deny claims which results in the death of an insured in California." (ECF No. 7 at 13). Further, Plaintiff asserts that "[a]lthough it has not yet been determined what state's law applies, Plaintiff has made claims under California law." *Id.* Although Utah has some interest in regulating the conduct of its insurers, Plaintiff seeks to bring claims under California law in the instant lawsuit and this case will be litigated in federal court regardless of forum-state. Further, California has an interest in the adjudication of a case arising from the alleged wrongful death of an individual in California for medical treatment. These factors weigh in favor of finding that the exercise of personal jurisdiction in a California forum is reasonable.

Defendants contend that efficiency will be better served in Utah. Defendants contend that Utah is a more convenient place for both parties and for many relevant

witnesses, including SelectHealth employees, University of Utah representatives, and Aylward's Idaho primary health care providers. Plaintiff asserts that many of her witnesses will be located in California or Arizona and will find a California forum to be more convenient. The "most efficient judicial resolution of the controversy" factor "concerns the efficiency of the forum, particularly where the witnesses and evidence are likely to be located." *Caruth v. Int'l Psychoanalytical Assn*, 59 F.3d 126, 129 (9th Cir. 1995), holding modified by *Yahoo! Inc.*, 433 F.3d 1199. Given that witnesses and evidence relating to this matter are likely located in California, Arizona, Utah, and Idaho, this factor does not weigh in favor of either party.

Defendants contend that "Plaintiff's interest in convenient and effective relieve [is] . . . better served in Utah" because Defendants are located there and because "Utah courts have jurisdiction to enforce any relief awarded." (ECF No. 8 at 8). The Ninth Circuit Court of Appeals has stated that "in this circuit, the plaintiff's convenience is not of paramount importance." *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002); *see Panavision*, 141 F.3d at 1324 ("In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience."). Plaintiff chose to litigate in this forum. Further, Defendants do not provide sufficient support for their argument that Utah is better positioned to provide convenient and effective relief. This factor does not weigh in favor of either party.

The Court concludes that Defendants have not satisfied their burden to present a compelling case that the exercise of personal jurisdiction in the California forum would be unreasonable. *See Panavision*, 131 F.3d at 1324 (concluding that the defendant "failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable."); *Ballard v. Savage*, 65 F.3d 1495, 1502 (9th Cir. 1995) (describing the "heavy burden of presenting a 'compelling case' against jurisdiction"). The motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is denied.

## IV. IMPROPER VENUE

Defendants move for dismissal or, in the alternative, transfer to the United States District Court for the District of Utah on the grounds that venue is improper. Defendants contend that venue is improper in the Southern District of California because Defendants do not reside in California, this Court lacks personal jurisdiction over Defendants, and the Complaint fails to allege that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in California. Defendants contend they have not waived their venue challenge by removing this action.

Plaintiff contends that "when an action is removed from state court, venue is automatically proper in the federal district court located where the action was pending." (ECF No. 7 at 14). Plaintiff states that "because this case was not brought in federal court, but rather was removed by Defendants, venue is proper if it meets the requirements of 28 U.S.C. § 1441(a)." *Id.* at 15. Plaintiff contends that venue is proper in the Southern District of California because this case was removed to the federal district court for the district which embraces the county where the state action is pending. *Id.*

A defendant may move to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ." *Id.* Once venue has been challenged pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). On a motion to dismiss for improper venue pursuant to Rule 12(b)(3), "pleadings need not be accepted as true, and facts outside the pleadings properly may be considered." *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005) (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

Pursuant to 28 U.S.C. § 1391(b), venue in a civil case may be proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in

which the district is located"[1]; (2) "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Assuming that Defendants have not waived the argument that venue is improper by removing this action to federal Court, the Court concludes that Plaintiff has satisfied her burden of establishing that venue is proper in the Southern District of California. In this case, Plaintiff's claims arise out of the alleged wrongful death of Phillip Aylward. (ECF No. 1 at 9). Plaintiff alleges that Aylward received medical care at UCSD in San Diego, California that was authorized by Defendants. Plaintiff alleges that Aylward died in San Diego, California while waiting for a lung transplant on October 28, 2016. *Id.* at ¶ 42. Plaintiff provides multiple exhibits documenting communications between Aylward, UCSD, and Defendants coordinating Plaintiff's treatments at UCSD in San Diego, California. (Exhibit B, ECF No. 7-1 at 11–40; Exhibit C, ECF No. 7-1 at 41–46). Plaintiff has sufficiently established that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of California. 28 U.S.C. § 1391(b). The motion to dismiss or transfer for improper venue is denied.[4]

## V.    TRANSFER TO DISTRICT OF UTAH

Defendants request the Court transfer this case to Utah under 28 U.S.C. § 1404(a). Defendants contend that "California has virtually no connection to the parties, witnesses,

---

[1] "For all venue purposes . . . a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled . . . [and] an entity . . . shall be deemed to reside . . . in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c).

[4] Because the Court concludes that venue is proper and denies the motion to dismiss on those grounds, the Court does not reach Plaintiff's argument that Defendants waived their venue challenge by removing this action to the District Court.

evidence, or underlying events." (ECF No. 2-1 at 5). Defendants assert that this case could have been brought in the District of Utah based on Defendants' citizenship. Defendants assert that Utah is a more convenient forum for the parties and witnesses. Defendants contend that the following factors also favor transfer: (1) the insurance agreement was entered into in Utah and Idaho; (2) "a federal court in Utah is fully capable of applying the basic contract and tort principles alleged in the Complaint"; (3) convenience of a party's counsel is immaterial and "plaintiff's choice of forum is entitled to less weight when, as here, Plaintiff does not reside in the selected jurisdiction and the operative facts did not occur in the chosen forum"; (4) parties have no current contacts with California and the only previous contact is Aylward's treatment at UCSD; (5) Defendants have no significant contacts with California; (6) cost of litigation will be lower in Utah; (7) Utah offers greater ability to compel attendance of non-party witnesses; and, (8) Utah offers access to principal sources of proof. *Id.* at 7–8.

Plaintiff contends that Defendants have not met their burden of demonstrating that the convenience of the parties and the interests of justice strongly favor a transfer of venue to the District of Utah. Plaintiff contends that Defendants offer limited facts to support their argument and rely only on conclusory statements. Plaintiff contends that Utah is not a more convenient forum because she resides in Idaho and Arizona and travel will be required regardless of whether the litigation occurs in Utah or California. Plaintiff asserts that third-party witnesses from St. Joseph's in Arizona and from UCSD in California will likely need to testify in this case. Plaintiff contends that Utah is not a more convenient forum for these witnesses. Plaintiff contends that she will be unable to compel Aylward's treating physicians in California to testify if this case is transferred to Utah. Plaintiff concedes that the parties entered into the insurance agreement in Idaho and Utah but contends that this factor bears little weight because the claims in this action do not arise from the negotiation, creation, or interpretation of the insurance agreement. Plaintiff contends that California law applies to this case and that regardless, this Court would be able to apply Utah law. Plaintiff contends that California has a significant connection to

this case because "Aylward died in San Diego, California, while awaiting a lung transplant which was substantially delayed due to the Defendants' wrongful acts in executing duties under the insurance contracts and common law." (ECF No. 7 at 19). Plaintiff contends that the cost of litigation will not be significantly lower in Utah. Plaintiff contends that any out-of-state documentary evidence can be "easily and inexpensively" moved and that many of Aylward's medical records are located in California. *Id.* at 20.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, (1964) (internal citations and quotation omitted). The statute requires a court to consider the convenience of the parties and witnesses and the interests of justice. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). Under § 1404(a), a district court may consider

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498–99. Relevant public policy is a significant factor as well. *Id.* at 499. The party moving for a transfer pursuant to § 1404(a) bears the burden of showing that another forum is more convenient and serves the interest of justice. *See id.* "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "Rather than relying on vague generalizations of inconvenience, the moving party must demonstrate, through affidavits or declarations containing admissible evidence, who the

key witnesses will be and what their testimony will generally include."  *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

Plaintiff's choice of forum in the Southern District of California is entitled some deference.  *See id.*; *see also Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) ("As already noted, the majority of the named plaintiffs do not reside in this district, rendering their choice of forum less significant.").  Plaintiff chose to bring this case in California, the state where Aylward is alleged to have died while waiting for approval for a lung transplant procedure.  The causes of action in this litigation arise from Aylward's death.  Defendants fail to provide any declarations or other admissible evidence in support of their assertion that Utah is a more convenient forum for the witnesses in this action.  *See Cochran*, 58 F. Supp. 2d at 1119.  Based on the representations made by both parties, witness travel will be required regardless of where this litigation occurs because witnesses reside in Utah, Idaho, California, and Arizona.  *See Decker Coal Co.*, 805 F.2d at 843 (affirming denial of a motion to transfer where "[t]he transfer would merely shift rather than eliminate the inconvenience").  Further, any difficulty Defendants may face in compelling their own employees to testify in California is not a factor that weighs heavily in favor of transfer.  *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("[D]efendant's claim that defense witnesses could not be expected to appear at trial must be discounted since at least four of the six witnesses are defendant's employees whom defendant can compel to testify.").  Defendants have not made a strong showing that Utah is a more convenient forum than California for witnesses.  *See, e.g.*, *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007) ("The convenience of witnesses is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate."); *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09CV2367 BEN (RBB), 2010 WL 2754249, at *2 (S.D. Cal. July 9, 2010).  Similarly, relevant medical records may be located in multiple states, including California.  The ease of access to principle sources of proof does not weigh in favor of transfer to Utah.

The forum's familiarity with the governing law is neutral and does not weigh in favor of transfer under the facts of this case. The parties disagree as to the applicable law (ECF No. 7 at 19; ECF No. 2-1 at 7) but Defendants fail to demonstrate that this Court would face difficulty in applying Utah or Idaho law to the facts of this case.

After weighing the § 1404(a) factors under the circumstances of this case, the Court concludes that Defendants have not made "a strong showing of inconvenience . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. The motion to transfer pursuant to § 1404(a) is denied.

## VI.   CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion to dismiss or in the alternative, transfer venue, is DENIED in its entirety. (ECF No. 2).

Dated: July 26, 2018

Hon. William Q. Hayes
United States District Court

18cv494-WQH-MDD