UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAOMI J. AYLWARD individually and as personal representative for the Estate of Philip Aylward,<br><br>Plaintiff,<br><br>v.<br><br>SELECTHEALTH, INC., a Utah corporation, dba SelectHealth; and DOES 1-25 inclusive,<br><br>Defendants, and<br><br>JEFF AYLWARD, an individual, and TODD AYLWARD, an individual,<br><br>Nominal Defendants. | Case No.: 3:18-cv-00494-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are Defendant SelectHealth, Inc.'s Motion for Summary Judgment against Plaintiff Naomi J. Aylward (ECF No. 43); Plaintiff Naomi J. Aylward's Motion for Partial Summary Judgment against Defendant SelectHealth, Inc. (ECF No. 44); Plaintiff Naomi J. Aylward's Motion to Strike (ECF No. 48); and Plaintiff Naomi J. Aylward's Motion to Exclude (ECF No. 49).

## I. PROCEDURAL BACKGROUND

Plaintiff is the wife of the deceased, Philip E. Aylward. On July 13, 2017, Plaintiff was appointed personal representative for the Estate of Philip Aylward. Defendant SelectHealth, Inc. dba SelectHealth ("SelectHealth") is an insurance benefits company.

On January 9, 2018, Plaintiff, individually and as personal representative for the Estate of Philip Aylward, filed a Complaint in the Superior Court of California for the County of San Diego, assigned case number 37-2018-00001278-CU-PO-CTL, against Defendants SelectHealth and SelectHealth Benefit Assurance Company, Inc. Plaintiff brought various claims against Defendants arising from their administration of Aylward's Medicare plan and Aylward's death.

On March 7, 2018, Defendants removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1).

On March 9, 2018, Defendants filed a Motion to Dismiss, or in the Alternative, Transfer Venue. (ECF No. 2). On July 26, 2018, the Court denied Defendants' Motion to Dismiss, or in the Alternative, Transfer Venue. (ECF No. 13).

On November 12, 2018, Plaintiff filed a First Amended Complaint. (ECF No. 26). Plaintiff alleges that, on October 28, 2016, Philip Aylward died in San Diego, California "while waiting for a lung transplant." *Id*. at 8. Plaintiff alleges the following nine causes of action: (1) negligence (survivorship); (2) negligence (wrongful death); (3) negligent misrepresentation (survivorship and wrongful death); (4) fraud (intentional misrepresentation) (survivorship and wrongful death); (5) bad faith tort (survivorship and wrongful death); (6) failure to properly investigate claim (survivorship and wrongful death); (7) breach of duty to inform insured of rights (survivorship and wrongful death); (8) negligent infliction of emotional distress (wrongful death); (9) intentional infliction of emotional distress (wrongful death).

Plaintiff seeks "money damages … as Personal Representative of the Estate of Philip Aylward from Defendants as a survivorship action in a sum to be determined at trial and representing funeral expenses, medical expenses, economic damages, punitive damages

and attorney fees incurred as the direct and proximate result of Defendants' conduct …." *Id*. at 24-25.  Plaintiff further seeks "money damages … individually for the wrongful death of Philip Aylward in a sum to be determined at trial and representing Plaintiff's medical expenses, funeral expenses, economic damages for loss of future support and household contribution, as well as non-economic damages for loss of society, protection, companionship, comfort and emotional distress, punitive damages and attorney fees incurred as a direct and proximate result of Defendants' conduct …." *Id*. at 25.

On October 11, 2019, Defendant SelectHealth filed a Motion for Summary Judgment against Plaintiff. (ECF No. 43). On the same day, Plaintiff filed a Motion for Partial Summary Judgment against Defendant SelectHealth (ECF No. 44) and a Motion for Entry of Default against Nominal Defendants (ECF No. 45). On November 4, 2019, Defendant SelectHealth filed a Response in opposition to Plaintiff's Motion for Partial Summary Judgment. (ECF No. 46). On the same day, Plaintiff filed a Response in opposition to Defendant SelectHealth's Motion for Summary Judgment (ECF No. 47); a Motion to Strike (ECF No. 48); and a Renewed Motion to Exclude (ECF No. 49). On November 11, 2019, Plaintiff filed a Reply in support of her Motion for Partial Summary Judgment. (ECF No. 53). On the same day, Defendant SelectHealth filed a Reply in support of its Motion for Summary Judgment. (ECF No. 54).

On November 25, 1019, Defendant SelectHealth filed a Response in opposition to Plaintiff's Motion to Strike (ECF No. 56) and a Response in opposition to Plaintiff's Renewed Motion to Exclude (ECF No. 57). On December 2, 2019, Plaintiff filed a Reply in support of her Motion to Strike (ECF No. 58) and a Reply in support of her Renewed Motion to Exclude (ECF No. 59). On December 10, 2019, Plaintiff filed a Sur-Reply in opposition to Defendant SelectHealth's Motion for Summary Judgment. (ECF No. 61).

On January 9, 2020, the Court heard oral argument on Defendant SelectHealth's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. (ECF No. 64).

## II. FACTS

In August of 2014, Philip E. Aylward ("Aylward") was seen at the University of Washington Medical Center and diagnosed "with pulmonary fibrosis, likely IPF" (idiopathic pulmonary fibrosis). Ex. 1 to Rossman Decl., ECF No. 44-4 at 2, 9.

In the fall of 2015, Aylward enrolled in a SelectHealth Advantage insurance plan ("the Plan") with an effective date of January 1, 2016. "SelectHealth Advantage plans are Medicare benefit and supplemental insurance plans which provide all the benefits to which Aylward was entitled under Medicare and are administered privately by [Defendant] SelectHealth." Def. SelectHealth's Resp. to Pl.'s Statement of Facts ¶ 3, ECF No. 46-1 at 2; Pl.'s Resp. to Def. SelectHealth's Statement of Undisputed Facts ¶ 1, ECF No. 47-1 at 2. "The Plan adopts the standard 'medical necessity' definition under Medicare and specifically provides that medical services are covered if medically necessary which means 'services, supplies, or drugs are needed for prevention, diagnosis, or treatment of your medical condition and meet accepted standards of medical practice.'" Def. SelectHealth's Resp. to Pl.'s Statement of Facts ¶ 3, ECF No. 46-1 at 2; Pl.'s Resp. to Def. SelectHealth's Statement of Undisputed Facts ¶ 1, ECF No. 47-1 at 2 (quoting Ex. 2 to Rossman Decl., ECF No. 44-5 at 59). The Plan covers "transplants" with "prior authorization." Ex. 2 to Rossman Decl., ECF No. 44-5 at 75, 44-6 at 1.

Defendant SelectHealth states in its Member Handbook that "[a] standard coverage decision means [Defendant SelectHealth] will give [the patient] an answer within 14 calendar days after" the patient's request is received. *Id.*, ECF No. 44-7 at 44. The Member Handbook further states that "[a] fast coverage decision means [Defendant SelectHealth] will answer within 72 hours" "if using the standard deadlines could cause serious harm to [the patient's] health or hurt [the patient's] ability to function." *Id.* at 44-45. However, "if … some information that may benefit [the patient] is missing …, or if [the patient] need[s] time to get information to [Defendant SelectHealth] for the review," a fast determination can be extended "up to 14 more calendar days." *Id.* at 44.

In January 2016, Aylward's treating physician in Boise, Idaho referred Aylward to the University of California at San Diego ("UCSD") for a lung transplant consultation.

On January 26, 2016, a preauthorization request for a lung transplant consultation at UCSD was submitted to Defendant SelectHealth. On January 29, 2016, Defendant SelectHealth denied the UCSD preauthorization request because Aylward "ha[d] not utilized in network providers for [the] consultation." Ex. 5 to Rossman Decl., ECF No. 44-11 at 4. On January 31, 2016, Aylward faxed an appeal to Defendant SelectHealth. On February 1, 2016, Defendant SelectHealth approved the preauthorization request for a lung transplant consultation at UCSD.

On February 10, 2016, Aylward met with Dr. Gordon Yung, the lung transplant specialist at UCSD, for a lung transplant evaluation. Dr. Yung described Aylward as "a 66-year-old male with progressive idiopathic pulmonary fibrosis despite treatment." Ex. 8 to Def. SelectHealth's Motion for Summary Judgment, ECF No. 43-3 at 138. Dr. Yung recommended that Aylward "be evaluated for lung transplantation, but given his age, this should be done as soon as possible." *Id*.

On March 7, 2016, UCSD requested "evaluation/work-up for lung transplant" including tests listed in an Evaluation/Work-up List. Ex. 6 to Rossman Decl., ECF No. 44-12 at 2-7. On March 10, 2016, Defendant SelectHealth approved the request for evaluation/work-up at UCSD.

On August 22, 2016, UCSD requested preauthorization for a single lung transplant.

On August 23, 2016, Defendant SelectHealth received a preauthorization request for consultation and evaluation of a possible lung transplant from Dr. Rajaj Walia at St. Joseph's Hospital and Medical Center in Phoenix, Arizona ("St. Joseph's"). On the same day, Defendant SelectHealth's employee informed a St. Joseph's employee over the phone "that … Aylward's plan did not generally provide for out-of-network benefits and that one of the requested codes was not covered …." Def. SelectHealth's Resp. to Pl.'s Statement of Facts ¶ 10, ECF No. 46-1 at 7; *see also* Pl.'s Resp. to Def. SelectHealth's Statement of Undisputed Facts ¶ 18, ECF No. 47-1 at 9. During the phone call, the St. Joseph's

employee asked that the St. Joseph's request "be evaluated for potential out-of-network services" and Defendant SelectHealth's employee agreed to do so. Def. SelectHealth's Resp. to Pl.'s Statement of Facts ¶ 10, ECF No. 46-1 at 7.

On August 26, 2016, Aylward met with Dr. Yung at UCSD. During the meeting, Aylward and Dr. Yung discussed the possibility of dual listing Aylward at UCLA/Cedars and St. Joseph's.

On August 30, 2016, Defendant SelectHealth approved UCSD's preauthorization request for a single lung transplant. On the same day, St. Joseph's provider called Defendant SelectHealth to check on the status of the preauthorization request for consultation and evaluation at St. Joseph's and was informed that the request was pending.

On August 31, 2016, Defendant SelectHealth's case manager Karen Hudson worked on the preauthorization request from St. Joseph's and sent the case for physician review.

On September 1, 2016, Defendant SelectHealth denied the preauthorization request for consultation and evaluation at St. Joseph's stating:

> Additional services out of network are not covered as the patient has already been approved for out of network services and has had an evaluation and work-up for lung transplant. Additional duplication services are not shown to be medically necessary and are not covered.

Ex. 9 to Rossman Decl., ECF No. 44-15 at 9. On the same day, Hudson called Aylward to inform him of the decision. During the phone call, Aylward informed Hudson that he would appeal the decision.

On September 7, 2016, Aylward was listed at UCSD for a lung transplant.

On October 4, 2016, Aylward met with Dr. Yung at UCSD. Dr. Yung noted that Aylward "would like to look into both UCLA/Cedars and St. Joseph in Arizona" for double listing and "will contact [Dr. Yung's] office once [a] decision is made." Ex. 8 to Def. SelectHealth's Motion for Summary Judgment, ECF No. 43-3 at 27.

On October 7, 2016, Aylward faxed a letter to Defendant SelectHealth requesting "double list[ing] and … a fast appeal" of Defendant SelectHealth's denial of the

preauthorization request for consultation and evaluation at St. Joseph's.  Ex. 19 to Rossman Decl., ECF No. 44-25 at 2.  Aylward stated in the letter that the requests were based on his age, the rapid progression of his disease, and the "availability of sound lungs." *Id*.  Aylward stated that Dr. Yung had encouraged the appeal and that "UCSD had completed only 10 lung transplants [while] St. Joseph's had completed 90 based on lung availability" in 2016.  *Id*.  On the same day, Defendant SelectHealth created an appeal file for its denial of the preauthorization request for consultation and evaluation at St. Joseph's.  Dr. Krista Schonrock, Defendant SelectHealth's medical director, testified that she denied Aylward's request for an expedited appeal and designated the appeal as "standard" "because [Aylward] was already on a transplant list" at UCSD.  Schonrock Dep., ECF No. 44-27 at 5.

On October 14, 2016, Defendant SelectHealth granted Alyward's appeal and allowed "for consultation only" at St. Joseph's but made "no exception" for the requested evaluation and testing.  Ex. 22 to Rossman Decl., ECF No. 44-28.

On October 17, 2016, Defendant SelectHealth informed St. Joseph's of the decision.  On the same day, St. Joseph's requested preauthorization for "a set of different, non-duplicative, tests it wanted to perform."  Def. SelectHealth's Resp. to Pl.'s Statement of Facts ¶ 17 ECF No. 46-1 at 21; *see also* Pl.'s Resp. to Def. SelectHealth's Statement of Undisputed Facts ¶ 32, ECF No. 47-1 at 15.

On October 22, 2016, Dr. Schonrock approved the preauthorization request from St. Joseph's but only for "any testing that has not been previously done …."  Ex. 23 to Rossman Decl., ECF No. 44-29 at 3.

On October 24, 2016, Dr. Yung at UCSD referred Aylward to Dr. Walia at St. Joseph's for lung transplant evaluation.  Dr. Yung explained that "the purpose of this referral is for double-listing" and that Aylward "is currently actively listed at [UCSD]."  Ex. 8. to Def. SelectHealth's Motion for Summary Judgment, ECF No. 43-3 at 151.

On October 26, 2016, Defendant SelectHealth sent Aylward a letter authorizing the "consult[ation] and testing for a lung transplant" at St. Joseph's. Ex. 25 to Rossman Decl., ECF No. 44-31 at 2.

On October 28, 2016, Aylward died in San Diego.

## III. CONTENTIONS OF THE PARTIES

Defendant SelectHealth requests that the Court enter judgment in Defendant SelectHealth's favor as to all of Plaintiff's claims. Defendant SelectHealth contends that Plaintiff's claims arise under the Medicare Act and must be administratively exhausted prior to judicial review. Defendant SelectHealth contends that it was not obligated to authorize Aylward's consultation and evaluation at St. Joseph's, a second out-of-network facility. Defendant SelectHealth contends that its actions did not cause Aylward's death. Defendant SelectHealth contends that Plaintiff fails to state a claim for infliction of emotional distress. Defendant SelectHealth contends that Plaintiff's claims for bad faith based on alleged failure to inform, fraud, and negligent misrepresentation fail.

Plaintiff contends that her claims do not arise under the Medicare Act and do not require administrative review. Plaintiff contends that Aylward's preauthorization request for consultation and evaluation at St. Joseph's was covered under the Plan and that the request was medically necessary. Plaintiff contends that there is no genuine issue of material fact that Defendant SelectHealth engaged in bad faith by breaching its duty to properly investigate Aylward's preauthorization request for consultation and evaluation at St. Joseph's. Plaintiff contends that Defendant SelectHealth would have discovered that the preauthorization request was medically necessary had it conducted a reasonable investigation in August or early September of 2016. Plaintiff requests that the Court grant partial summary judgment in Plaintiff's favor as to Plaintiff's fifth cause of action for bad faith tort.

## IV. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ.

P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment "bears the [initial] burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. U.S.*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). For "an issue on which the nonmoving party bears the burden of proof," the movant discharges its summary judgment burden by "pointing out … an absence of evidence to support the nonmoving party's case" and not by "*negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 325 (emphasis in original).

The burden then shifts to the nonmovant to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256. To survive summary judgment, the nonmovant cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "If the [nonmovant] stated only conclusions, and not 'such facts as would be admissible in evidence,' then it would be too conclusory to be cognizable …." *U.S. v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999) (citing Fed. R. Civ. P. 56(e)). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor. *See Anderson*, 477 U.S. at 256. The nonmoving party's

declaration or sworn testimony "is to be accepted as true…." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (ellipsis in original).

## V.    DISCUSSION

Defendant SelectHealth contends that Plaintiff's claims arise under the Medicare Act and must be exhausted through Medicare administrative processes before proceeding to judicial review.  Defendant SelectHealth contends that the Court must analyze and apply the Medicare Act to determine whether Defendant SelectHealth delayed approval of the preauthorization requests by incorrectly determining that the requests were duplicative and medically unnecessary.  Defendant SelectHealth further contends that the Court must analyze and apply the Medicare Act to determine whether Defendant SelectHealth failed to provide proper notice to Aylward of his right to appeal.  Defendant SelectHealth contends that Plaintiff's claims are preempted and that the Court lacks subject matter jurisdiction over this action.

Plaintiff contends that her claims do not arise under the Medicare Act and that administrative review is not required.  Plaintiff asserts that no claims have been brought for payment of benefits pursuant to the Plan.  Plaintiff contends that the claims are not preempted and that the court has subject matter jurisdiction over this action.  Plaintiff contends that claims arising from the denial of benefits are not preempted because Plaintiff is not seeking to recover benefits.

### a.    Administrative Review

"The [Medicare] Act's exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision, 42 U.S.C. § 405(g), 'the sole avenue for judicial review' for claims 'arising under the Medicare Act.'" *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984)) (internal quotations omitted).

> The Supreme Court has held that the exhaustion requirement of § 405(g) consists of a non-waivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the

> claimant. Only once the Secretary has issued a final decision may the individual seek judicial review of that determination. A final decision is rendered only after the individual has pressed his claim through all levels of administrative review. In sum, jurisdiction over cases arising under Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review.

*Id.* (internal quotations marks, brackets, and citations omitted).

"The key inquiry in determining whether § 405(h) requires exhaustion before [this Court] can exercise jurisdiction is whether the claim 'arises under' the [Medicare] Act." *Id.* at 1141 (quoting *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 499 (9th Cir. 1996)). "The Supreme Court has identified two circumstances in which a claim 'arises under' the Medicare Act: (1) where the 'standing and the substantive basis for the presentation of the claims' is the Medicare Act; and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits." *Id.* (quoting *Heckler*, 466 U.S. at 614-15). In this case, the Medicare Act is not the standing and substantive basis for Plaintiff's claims because Plaintiff brings state common law claims. *See* ECF No. 26 at 8-24. However, "even a state law claim may 'arise under' the Medicare Act." *Do Sung Uhm*, 620 F.3d at 1142 (quoting *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1113-15 (9th Cir. 2003)). Therefore, the Court must determine whether Plaintiff's claims are "inextricably intertwined" with a claim for Medicare benefits. *Id.* at 1141 (quoting *Heckler*, 466 U.S. at 614).

"One category of claims that … courts have found to 'arise under' the Act are those cases that are '[c]leverly concealed claims for benefits.'" *Id.* (quoting *Kaiser*, 347 F.3d at 1112) (second alteration in original). "[W]hether or not plaintiffs seek reimbursement of benefits is not 'strongly probative' of whether a claim 'arises under' the Medicare Act" because "the remedy sought [is not] dispositive of the 'arising under' question." *Id.* at 1142 (quoting *Kaiser*, 347 F.3d at 1112). "In sum, … where, at bottom, a plaintiff is complaining about the denial of Medicare benefits … the claim 'arises under' the Medicare Act." *Id.* at 1142-43.

In *Ardary*, plaintiffs, the surviving family members of a deceased Medicare beneficiary, alleged that defendant, a private Medicare provider, explicitly promised the Medicare beneficiary and her family that under defendant's plan, should the need arise, defendant would immediately authorize transfer to a larger hospital for emergency care because the Medicare beneficiary lived in a relatively isolated area. *See Ardary*, 98 F.3d at 497. The complaint alleged that the Medicare beneficiary enrolled in defendant's plan based on these representations and that defendant refused to authorize airlift transportation to a larger hospital when the Medicare beneficiary subsequently suffered a heart attack. *See id*. at 497-98. Plaintiffs, the deceased Medicare beneficiary's heirs, filed a wrongful death suit alleging negligence, intentional and/or negligent infliction of emotional distress, intentional and/or negligent misrepresentation, and professional negligence. *See id*. at 498.

The Court of Appeals set out the following jurisdictional question:

> does the Medicare Act, which provides for exclusive administrative review of all claims "arising under" that Act, apply to preclude the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider when those claims do not seek recovery of Medicare benefits but instead seek compensatory and punitive damages on the grounds that the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary?

*Id*. at 499. The Court of Appeals held that even though plaintiffs' "wrongful death complaint [wa]s 'predicated on' [defendant]'s failure to authorize the airlift transfer, the claims [we]re not 'inextricably intertwined' because [plaintiffs] [we]re *at bottom* not seeking to recover *benefits*" and the death "[could not] be remedied by the retroactive authorization or payment of the airlift transfer." *Id*. at 500 (emphasis in original) (citation omitted); *see also Hofler v. Aetna US Healthcare of California, Inc.*, 296 F.3d 764, 766, 769-70 (9th Cir. 2002), abrogated by *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) (wrongful death claim alleging that defendant's Medicare HMO "promised 'more benefits than Medicare and most Medicare Supplements combined'" and that "the care Mr.

Hofler received 'did not match [defendant]'s promises'" was not subject to the exhaustion requirement).

In *Ardary*, the Court of Appeals determined that the question of whether defendant "both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary" could be answered "largely independent of the underlying Medicare law" because defendant made an explicit representation to the beneficiary that an emergency transfer would immediately be authorized. *Ardary*, 98 F.3d at 497, 499; *Kaiser*, 347 F.3d at 1115. In this case, Plaintiff brings this action to recover on claims that Defendant breached its obligations to Aylward and Plaintiff in the handling of Aylward's claim for benefits under the Plan by failing to conduct any investigation into the request for preauthorization submitted by St. Joseph's on August 23, 2016 and failing to timely process Aylward's October 7, 2016 appeal. *See* ECF No. 47 at 7. There is no evidence in this case of any additional action on Defendant's part that would support claims "wholly collateral" to the decision to approve Aylward's preauthorization request for consultation and evaluation at St. Joseph's. *Heckler*, 466 U.S. at 618 (internal quotation marks omitted). Plaintiff's claims require a determination that Plaintiff was entitled to the preauthorization request for consultation and evaluation at St. Joseph's prior to October 26, 2016 and that Defendant was wrong to deny approval prior to October 26, 2016. The facts relevant to Plaintiff's claims of failure to investigate are "inextricably intertwined" to a benefits decision. *Ardary*, 98 F.3d at 500; *see e.g., Kaiser*, 347 F.3d at 1115 ("Hearing most of the [plaintiff]s' claims would necessarily mean redeciding [defendant's related] Medicare decisions."); *Shakespeare v. SCAN Health Plan, Inc.*, No. 3: 17-CV-568-BTM-MDD, 2018 WL 340422, at *4 (S.D. Cal. Jan. 8, 2018) ("Plaintiff's claims of breach of contract, negligence, willful misconduct, and breach of covenant of good faith and fair dealing would all require a determination that Plaintiff was entitled to the Watchman Device and Defendant was wrong to deny approval prior to October 12, 2016. Plaintiff's claims are therefore inextricably tied to a claim for Medicare benefits."). The Court finds that

Plaintiff's claims arise under the Medicare Act and that 42 U.S.C. § 405(h) and (g) require exhaustion of administrative remedies before judicial review.

Under the facts of this case, Aylward is deceased and the administrative review process will not provide money damages in a survivorship action or money damages for Aylward's wrongful death. However, even if "the administrative action may in some sense be futile for [plaintiffs] (if the administrative process cannot provide the damages [plaintiffs] seek), administrative exhaustion of [plaintiff]s' claims would still serve the purpose of exhaustion and not be futile in the context of the system." *Kaiser*, 347 F.3d at 1115. The Court of Appeals has explained that

> [C]ases may "arise under" Medicare under § 405(h) and yet contain issues which are not suitable for resolution by the [administrative review process]. This disconnect, while at first puzzling, makes sense in the context of the purposes of exhaustion. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." If a court were to prematurely tackle a question inextricably intertwined with an issue properly resolved by an agency, the court would defeat the purposes of § 405(g) and (h) even if the question was not one that the agency has the authority to answer fully. More specifically, even if the claims raised here are broader than those suitable for resolution by the [administrative review process], deciding [plaintiff]s' claims would mean also passing judgment on questions which are appropriately first answered by the [administrative review process]. This is why all inextricably intertwined claims must first be raised in an administrative process. In that process, the agency, with the benefit of its experience and expertise, can resolve whatever issues it can, limiting the number of issues before judicial review (and limiting review on those issues according to the appropriate standard of deference).

*Id*. at 1116 n.4 (internal citation omitted); *see also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10, 23 (2000) (42 U.S.C. § 405(g) and (h) preclude federal court review of claims "arising under" the Medicare Act before administrative remedies have been exhausted. "The fact that the agency might not provide a hearing for [a] particular contention, or may lack the power to provide one is beside the point because it is the

14

3:18-cv-00494-WQH-MDD

'action' arising under the Medicare Act that must be channeled through the agency."). In this case, allowing the administrative review process to address whether it was proper for Defendant to deny approval of Aylward's preauthorization request for consultation and evaluation at St. Joseph's prior to October 26, 2016 fulfills the purpose of § 405(g) and (h) exhaustion. The review of approval of a claim for benefits prior to October 26, 2016 involves agency expertise appropriately raised first in an administrative process. The Court finds that exhaustion of administrative remedies is required pursuant to 42 U.S.C. § 405(g) and (h).

### b. Preemption

The Secretary of Health and Human Services delegated to the Centers for Medicare & Medicaid Services ("CMS"), the responsibility for administering Medicare. Under Part C of the Medicare Act, CMS contracts with Medicare Advantage Organizations ("MAOs") to provide Medicare Advantage ("MA") plans to eligible Medicare beneficiaries. *See* 42 U.S.C. § 1395w-23. MAOs are required to comply with the standards set forth under Part C of the Medicare Act. *See* 42 U.S.C. § 1395w-27(a). In making Medicare benefits decisions, MAOs follow a specified procedure on the standards they must adhere to:

> CMS issues national coverage determinations (NCDs) that specify whether certain items, services, procedures or technologies are reasonable and necessary under § 1862(a)(1)(A) of the Act. In the absence of an NCD, [MAOs] are responsible for determining whether services are reasonable and necessary. If no local coverage determination (LCD) exists for a particular item or service, the [MAO] shall consider an item or service to be reasonable and necessary if the item or service meets [a specified set of criteria].

*See* Medicare Program Integrity Manual, CMS Pub. 100-08, ch. 3 (November 9, 2017).

The Medicare Act's preemption provision states that "[t]he standards established under this part shall supercede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). "The plain language of the statute therefore provides that CMS 'standards' supersede 'any State law or regulation …

with respect to' a [MA plan] offered by a [MAO]." *Do Sung Uhm*, 620 F.3d at 1148-49 (first alteration in original). "[C]ommon law claims fall within the ambit of the Act's preemption clause …." *Id*. at 1156.

In *Do Sung Uhm,* plaintiffs' fraud and fraud in the inducement claims were based on allegations that defendant's Medicare marketing materials were misleading. *See id*. at 1150. The Court of Appeals held that plaintiffs' claims were preempted by 42 U.S.C. § 1395w-26(b)(3) because "CMS promulgated detailed regulations governing how Part D sponsors market their plans" and had to "approve all PDP marketing materials before they [were] made available to Medicare beneficiaries." *Id*. at 1150-51 (citations omitted). The Court of Appeals stated that

> [I]n order to determine whether [defendant] committed a fraud or fraud in the inducement, a court would necessarily need to determine whether the written and oral statements were misleading. Were a state court to determine that [defendant]'s marketing materials constituted misrepresentations resulting in fraud or fraud in the inducement, it would directly undermine CMS's prior determination that those materials were not misleading and in turn undermine CMS's ability to create its own standards for what constitutes "misleading" information about Medicare Part D. Thus, the [plaintiff]s' fraud and fraud in the inducement claims must be preempted.

*Id*. at 1157 (internal citation omitted).

In this case, in order to adjudicate Plaintiff's claims, the Court would necessarily need to determine whether Aylward was entitled to the preauthorization request for consultation and evaluation at St. Joseph's in the first place, a decision that is governed by detailed CMS standards. Beyond contending that Defendant's benefit decision was wrong, Plaintiff fails to allege any other action on Defendant's part that would support Plaintiff's claims. Deciding Plaintiff's claims would directly undermine the standards set by CMS when a preauthorization request for consultation and evaluation at a second facility after an initial listing is covered by Medicare. The Court concludes that Plaintiff's claims are preempted.

## VI. CONCLUSION

IT IS HEREBY ORDERED that Defendant SelectHealth, Inc.'s Motion for Summary Judgment against Plaintiff Naomi J. Aylward (ECF No. 43) is GRANTED.

IT IS HEREBY FURTHER ORDERED that Plaintiff Naomi J. Aylward's Motion for Partial Summary Judgment against Defendant SelectHealth, Inc. (ECF No. 44) is DENIED.

IT IS HEREBY FURTHER ORDERED that Plaintiff Naomi J. Aylward's Motion to Strike (ECF No. 48) is DENIED as moot.

IT IS HEREBY FURTHER ORDERED that Plaintiff Naomi J. Aylward's Renewed Motion to Exclude (ECF No. 49) is DENIED as moot.

The Clerk of the Court shall enter judgment for Defendant SelectHealth, Inc. and against Plaintiff Naomi J. Aylward.

Dated: June 1, 2020

Hon. William Q. Hayes
United States District Court